UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**KEVIN GUILLORY, ET AL.**      **CASE NO. 2:18-CV-01451**

**VERSUS**      **JUDGE JAMES D. CAIN, JR.**

**UNITED STATES OF AMERICA**      **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

On May 26, 2020, the Court held a bench trial on plaintiffs' claims of personal injury against the United States of America under the Federal Tort Claims Act ("FTCA"). At trial the government stipulated to liability but contested the extent of plaintiffs' damages. Having considered the evidence and applicable law, the Court now issues its ruling.

### I.
### BACKGROUND

This litigation arises from injuries that J.G., a minor child, sustained in a motor vehicle accident in Cameron Parish, Louisiana, on July 1, 2016. J.G.'s parents, Kevin and Janene Guillory, filed suit here individually and on behalf of J.G. on November 7, 2018. The parties have stipulated that the vehicle was driven by Ashley Stewart, who was acting in the course and scope of her employment as a United States Postal Service at the time of the accident. Accordingly, the government is liable for J.G.'s injuries under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and this Court has jurisdiction over the case under 28 U.S.C. §§ 1331 and 1346(b).

The government disputes the "nature, extent, duration and cause" of the plaintiffs' alleged damages. Doc. 25, p. 1. The matter came before the Court for trial without a jury. After considering the testimony of witnesses and exhibits entered into evidence, as well as the post-trial briefs filed by both parties, the Court now makes its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that a conclusion of law constitutes a finding of fact, the Court also adopts it as such.

## II.
### FINDINGS OF FACT

*A. Treatment History*

J.G. was eight years old on July 1, 2016. *See* doc. 29, att. 1, p. 6. On that date he was transported by ambulance to Christus St. Patrick Hospital in Lake Charles, Louisiana, after sustaining injuries to his leg and arm during the above-described motor vehicle accident. *Id.* at 2–3. Paramedics recorded that J.G. was riding in a rear passenger seat and was not wearing a seatbelt at the time of the accident, which occurred when the vehicle hit a tree. *Id.*

At the emergency room, J.G. was treated for a two-inch open leg laceration and a closed forearm fracture. *See* doc. 29, att. 2, pp. 35–38. The leg injury required stitches. *Id.* The attending physician also attempted an unsuccessful reduction of the fracture in the ER, and then admitted J.G. to the hospital so that he could receive a closed reduction and cast in the operating room. *Id.* at 127. That procedure was performed the following day, under general anesthesia, by Dr. George Trappey. *Id.* at 122, 127–28. At the first post-operative visit on July 11, however, Dr. Trappey determined that the fracture was no longer aligned

and that a second surgery was required. Doc. 30, att. 2, pp. 9–10. He operated the next day, inserting a flexible titanium nail in J.G.'s arm, and placed J.G. in a "long-arm" (shoulder-to-wrist) cast for four weeks. *Id.* at 11–15. The long-arm cast was removed at an office visit on August 8. *Id.* at 15–6. J.G. then wore a "short-arm" (elbow-to-wrist) cast for an additional two weeks, when it was removed at an office visit on August 22. *Id.* Dr. Trappey ordered that J.G. not participate in any sports or activities (including recess and physical education) until his next visit, scheduled for six weeks later. Doc. 29, att. 4, pp. 11–12.

At his follow-up visit on October 3, J.G. reported no problems or complaints other than being able to feel the rod while in a cold environment. *Id.* at 8. Dr. Trappey advised that he return in two months. He also kept in place restrictions on physical education and recess.[1] *Id.* at 7–8. The next visit occurred on December 2, 2016. Dr. Trappey recorded that J.G. was doing well and "really has no complaints whatsoever." *Id.* at 107. He noted no restrictions for J.G.'s return to school and recommended that J.G. return in a month in order to schedule removal of the nail. *Id.* at 107–08. The nail was removed under general anesthesia on January 19, 2017. *Id.* at 82–83. At a post-operative visit on February 3, J.G. had no complaints. *Id.* at 73–75. He was given a Velcro wrist splint to wear when at school or active, but was not assigned any other activity restrictions. *Id.* J.G. had his final office visit with Dr. Trappey on March 10, 2017, and was released from care. *Id.* at 68–70.

Dr. Trappey confirmed via letter dated March 28, 2017, that J.G. had healed uneventfully and was not expected to have any permanent disability. Doc. 30, att. 2, p. 30.

---

[1] Two days later, Mr. Guillory contacted Dr. Trappey's office to report that J.G. had bumped his arm at school and was in pain. *Id.* at 5. He was advised to try a Velcro splint. *Id.* There is no record of any follow-up from this incident.

J.G.'s treatment resulted in medical expenses billed in the amount of $38,943.56. Doc. 29, att. 12. J.G. was covered by Medicaid, however, which paid all of his medical expenses in the amount of $1,117.59. *Id.*

### B. Family Testimony

J.G. and his parents all testified at the trial in this matter. J.G. recalled that he was riding with the mail carrier, helping her to deliver packages, and that she was texting while she drove. Tr., p. 45. He yelled "Tree!" and then threw his hands up just as the truck crashed. *Id.* Both parents were at work at the time of the accident and rushed to the emergency room, where they met their son upon his arrival by ambulance. *Id.* at 9–10, 26–27. J.G. recalled having multiple surgeries on his arm and receiving stitches on his leg. *Id.* at 45. He did not enjoy the experience and has a particular dislike of hospitals. *Id.*

J.G.'s recovery was difficult because he had to get family members to help him with daily activities, like bathing or getting out of bed, while in the long-arm cast. *Id.* Even after he transitioned to the short-arm cast, he could not participate in many of his favorite activities at home or school. *Id.* at 45–46. Both parents recalled that J.G. complained of discomfort throughout the summer. *Id.* at 18, 29–30. Many of the family's normal summer activities, including sports and horseback riding, came to a complete stop for J.G. and his three siblings after J.G.'s injury. *Id.* at 14–15. Finally, the family cancelled scheduled vacations because of the accident and Mrs. Guillory missed a lot of work to stay home and care for J.G. *Id.* at 43.

J.G. was an honor roll student before his injury, but struggled with attention and grades for two years afterwards. *Id.* at 36–39. He never resumed the sports he enjoyed

before the accident.[2] *Id.* at 35–36. His grades have recovered in middle school, however, and he now enjoys participating in the school band. *Id.* at 36–38. J.G. remains very fearful about car accidents, calling to check on his parents if they have not made it home from work on time and monitoring the driving of people he rides with. *Id.* at 19–20, 34–35.

### III.
### CONCLUSIONS OF LAW

"The FTCA authorizes civil actions for damages against the United States . . . under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). Accordingly, Louisiana substantive law applies in this matter. Under Louisiana law, a plaintiff whose medical expenses are covered by Medicaid cannot recover the write-off amount. *Bozeman v. State*, 870 So.2d 692, 705–06 (La. 2004). Because J.G.'s medical expenses were covered by Medicaid, recoverable damages in this matter are limited to amount paid by that service ($1,117.59) plus general damages and damages for loss of consortium. Plaintiffs seek general damages in the range of $125,000 to $150,000 and damages of $15,000 to $25,000 per parent to Mr. and Mrs. Guillory, for loss of consortium of their son. Doc. 31. The government counters that general damages should fall within the range of $25,000 to $40,000 and that no award should be made for loss of consortium.

---

[2] Mr. Guillory testified that J.G. had told him he was afraid he would reinjure his arm, and that J.G. still claimed to experience pain from time to time. *Id.* at 21.

### A. *General Damages*

"General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money." *All v. Safeco Ins. Co.*, 235 So.3d 1134, 1137 (La. Ct. App. 1st Cir. 2017). Accordingly, the trier of fact enjoys great discretion in this area. *Casbon v. Phillips*, 897 So.2d 790, 793 (La. Ct. App. 4th Cir. 2005). His award should only be set aside when it is so high or low in proportion to the injury as to shock the conscience. *Id.*

Both sides cite other Louisiana cases on damage awards for similar injuries. In *Brammer v. Bossier Parish School Board*, the appeals court affirmed an award of $125,000 in general damages to a fourth grader who suffered a broken humerus. 183 So.3d 606 (La. Ct. App. 2d Cir. 2015). There the plaintiff required surgery for the insertion of two pins and incurred special damages in the amount of $12,674.14. Although the plaintiff had good range of motion and reported no pain by his six week follow-up visit, his treating orthopedist noted that the fracture had been "a jagged one, with a sharp bone spike sticking into [plaintiff's] deltoid muscle," which he characterized "as a relatively rare and painful injury." *Id.* at 616. He also testified that this kind of injury "could be painful for months, years, maybe forever." *Id.*

In *Skillman v. Riverside Baptist Church*, the appeals court affirmed an award of $150,000 for past pain and suffering of a toddler who was injured when she fell of a playset at a daycare facility. 171 So.3d 407 (La. Ct. App. 5th Cir. 2015). The court noted that the child had sustained a fracture to her humerus which required three surgeries under general

-6-

anesthesia and two months of physical therapy. The record also showed that the child experienced pain after her operations and during her physical therapy sessions. *Id.* at 422.

In turn, the government cites four cases with somewhat similar injuries yielding general damage awards between $25,000 and $62,500. *See Wheelis v. CGU Ins.*, 803 So.2d 365 (La. Ct. App. 2d Cir. 2001); *Elliott v. Robinson*, 612 So.2d 996 (La. Ct. App. 2d Cir. 1993), *Jarreau v. Orleans Par. Sch. Bd.*, 600 So.2d 1389 (La. Ct. App. 4th Cir. 1992); and *Treadaway v. Shoney's, Inc.*, 633 So.2d 841 (La. Ct App. 4th Cir. 1994). Most relevant to this matter, the jury in *Jarreau* awarded $50,000 in general damages to a student athlete who received a wrist fracture. The injury had required two surgeries and physical therapy, and was forecasted to cause permanent limitations on his wrist movement that would preclude vigorous manual labor. 600 So.2d at 1391–94.

*Jarreau* is nearly twenty years old, and the $50,000 award in 1992 would have the purchasing power of about $90,000 in 2020. *See* U.S. Inflation Calculator, *available at* https://www.usinflationcalculator.com/. Unlike the injured parties in *Brammer* and *Jarreau*, J.G. is not predicted to have any future physical pain or limitations. But *Skillman* shows that a high award may still be justified based on what he has endured to date.

In addition to the fright and pain surrounding the accident itself, J.G. endured three operations under general anesthesia which also caused him discomfort. He did not require physical therapy, but his injuries caused several months of limited mobility that prevented him from taking part in normal family and school activities. The evidence suggests that these limitations might have impacted his schoolwork for several months thereafter and that his concern about reinjuring his arm has prevented him from returning to activities he

once enjoyed. He also endured the pain of an open leg wound and the fear associated with the accident and being transported by ambulance without his parents. As a result he still fears being in another accident. Accordingly, an award of $90,000 in general damages is appropriate.

### B. Loss of Consortium

"Damages for loss of consortium are general damages," and the fact finder is given ample discretion in their assessment. *Brammer*, 183 So.3d at 617 (citing La. Civ. Code art. 2324.1). A parent's loss of consortium claim includes damages for the loss of: (1) love and affection, (2) society and companionship, (3) performance of material services, (4) financial support, (5) aid and assistance, and (6) fidelity. *Id.* (citing *Doe ex rel. Doe v. DeSoto Par. Sch. Bd.*, 907 So.2d 275, 283 (La. Ct. App. 2d Cir. 2005)). "A child may sustain physical injury without necessarily causing his parents a loss of consortium." *Bell v. USAA Cas. Ins. Co.*, 707 So.2d 102, 110–11 (La. Ct. App. 2d Cir. 1998).

Because of the accident, Mr. and Mrs. Guillory sacrificed family vacations and other normal elements of their family life to concentrate on J.G.'s care for the remainder of the summer. The accident also restricted J.G. from participating in activities, such as sports and horseback riding, that he had previously enjoyed with his parents and siblings. Accordingly, the Court finds that an award of $5,000 per parent is justified for the loss of J.G.'s society and companionship.

## IV.
## CONCLUSION

For the reasons stated above, judgment will be entered for the plaintiffs in the above-described amounts.

**THUS DONE** in Chambers on this 11th day of June, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**